IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-03268-MEH

BBG HOLDING CORP.,

    Plaintiff,

v.

K CAPITAL, LLC, and
MIKHAIL G. KRAMINSKI,

    Defendants.

———————————————————————————————————————

**ORDER**
———————————————————————————————————————

**Michael E. Hegarty, United States Magistrate Judge.**

    Before the Court is Defendants' Motion to Dismiss. ECF 17. Most of the material facts of this case do not appear to be disputed. Plaintiff owns a commercial property in Avon, Colorado. On February 6, 2020, the parties signed a purchase and sale agreement (PSA) for K Capital, LLC to purchase the property. Under the PSA, K Capital was to pay an earnest money deposit of $25,000 by February 13, 2020, and an additional $75,000 by March 16, 2020, or else the PSA would terminate. K Capital did not pay the deposit by February 13, 2020. The next day, February 14, 2020, K Capital tendered a check for $25,000 to the escrow agent. The PSA stated that K Capital could provide a written notice of termination on or before March 9, 2020, and if it did so, the earnest money would be returned. Prior to that deadline, on March 3, 2020, the escrow agent informed Plaintiff that K Capital's check was rejected for insufficient funds. Thereafter, K Capital expressed a continuing intent to purchase the property. Plaintiff also intended to engage in the sale and did not try to sell the property to anyone else at that time. However, K Capital did not tender $100,000 by March 16 ($25,000 to make up for the returned check, and the additional $75,000 to

come to the contractual earnest money amount). On March 17, 2020, Plaintiff sent K Capital a written notice of default, and K Capital did not respond. Unfortunately, this time period is when the COVID-19 pandemic mushroomed in the United States, and Plaintiff alleges the property's value has decreased significantly. Moreover, Plaintiff alleges that had it known of K Capital's intentions, it could have sold the property at that time and mitigated this loss.

Defendants move to dismiss on several grounds. I will address their arguments below.

## LEGAL STANDARDS

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 680. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 679.

Plausibility refers "'to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th

Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1192. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id.* (quotation marks and citation omitted).

## ARGUMENT

### I.  **Breach of Contract**

First, Defendants allege Plaintiff fails to plead a valid contract, the First Claim for Relief. I disagree. Plaintiff pleads as follows: "The PSA, executed on February 6, 2020, is a valid and enforceable contract." Complaint ¶ 14. The Complaint attaches the fully executed PSA.[1] Under

---

[1] Ordinarily on a motion to dismiss, the sufficiency of a complaint must rest on the allegations alone. However, I may consider attachments to the Complaint such as the PSA. *See Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001) ("[I]n deciding a motion to dismiss pursuant to Rule 12(b)(6), a court may look both to the complaint itself and to any documents attached as exhibits.").

3

any pleading standard, Plaintiff has pleaded a valid contract.  However, Defendants assert several auxiliary arguments about the contract.

Defendants assert the contract was between Plaintiff and K Capital, and that Defendant Mikhail G. Kraminski was not a party.  I agree.  Kaminski signed the contract in a representative capacity, and in all respects, the PSA indicates it is between Plaintiff and K Capital.  However, Plaintiff brings its first claim, for breach of contract, against K Capital only.  Therefore, Defendants' argument is irrelevant.

Next, Defendants assert the PSA terminated by its own terms on February 13, 2020, when K Capital did not pay the $25,000 earnest money deposit.  Section 2.1.1 of the PSA states: "This Agreement shall automatically terminate if Purchaser does not deposit the Earnest Money with Escrow Agent by such date."  Under the plain language of the PSA, it terminated on February 13, 2020.  The Complaint and the parties' brief establish that the parties continued to behave thereafter as though the contract survived.  Several other provisions of the PSA may be relevant to this analysis.  The first is Section 7.2:

> In the event that Purchaser (i) materially defaults in the performance of any of its obligations under this Agreement other than its obligation to proceed to Closing, which default remains uncured for five (5) Business Days after written notice thereof to Purchaser . . . or (iii) fails to pay the sums required to be paid by Purchaser under this Agreement which non-payment remains uncured for five (5) Business Days after written notice thereof to Purchaser . . . Seller may terminate this Agreement by providing written notice of termination to Purchaser."

In addition, both Section 7.1 and 7.2 permit the parties to the PSA to "*nonetheless*" (emphasis added) proceed to close on the property even if a "covenant or condition to Closing has not been fulfilled or satisfied," although the parties waived certain respective rights in such an instance.

I believe a somewhat dated Colorado Supreme Court opinion may apply here:

> To the suggestion that, subsequent to this date, they acted, as far as possible, under the terms and conditions of the previous agreement, it is answered that, if such be

4

> the fact, that agreement must be regarded as then readopted, and that, for the purposes of this case, its existence dates from the time of such readoption.

*Tritch v. Norton*, 10 Colo. 337, 351, 15 P. 680, 688 (1887). I could find no subsequent Colorado precedent altering this doctrine. The parties' conduct here appears to establish a readoption of the PSA, whose express terms thereafter governed the parties' conduct.

Plaintiff also relies on the principle that the parties waived noncompliance with or termination of the PSA. This is both expressly permitted by Sections 7.1 and 7.2 of the PSA, and by Colorado law. "[A]n express provision in a written agreement may be waived, either expressly or by implication. . . . Such a waiver may be implied if a party engages in conduct which manifests an intent to relinquish the right or privilege or acts inconsistently with its assertion. . . . [T]he question of waiver is a question of fact . . . ." *James H. Moore & Assocs. Realty, Inc. v. Arrowhead at Vail*, 892 P.2d 367, 372 (Colo. App. 1994) (citations omitted). Although Defendants rely on Colo. Rev. Stat. § 38-10-108, which requires *some* writing memorializing a contract for the sale of real property, that statute does not require dismissal here. It states that the writing may be a contract or "some note or memorandum thereof expressing the consideration." The original PSA, whether it was readopted or whether the parties waived termination, provides such a writing. Further, although Section 9.4 of the PSA states that it may "be amended only by a written instrument executed by the party or parties to be bound thereby," I do not believe there was any amendment here, so that provision does not apply. By the same token, the legal effect of the bounced check, which could have been viewed by Plaintiff as a termination or breach, was waived by Plaintiff, which continued by its course of conduct to proceed with the PSA.[2]

---

[2] Whether the legal effect of the parties' actions constituted a readoption of the PSA, or a contractual or common law waiver of any termination event, or a combination thereof, it appears that at the least, Plaintiff has no cause of action for the missed February 13, 2020 $25,000 earnest money deposit.

5

Defendants also argue that Plaintiff has failed to plead that K Capital "failed to perform." I disagree. Plaintiff alleges that "K Capital's failure to deposit the earnest money is a material default of an obligation under the PSA." Complaint ¶ 27. Again, Defendants assert an auxiliary argument about this theory. Specifically, Defendants allege that a stop payment order K Capital requested on the $25,000 check (Complaint ¶ 23) constituted its written termination of the PSA under Section 3.1.1: "Purchaser shall have the right, for any or no reason, to terminate this Agreement on or before the Due Diligence Contingency Date." However, that section requires "written notice to Seller exercising this termination right." On this Motion to Dismiss, I cannot find that an alleged stop notice payment, which is not attached to the Complaint nor submitted by either side, complies with Section 3.1.1 as a written notice to the seller.

Defendants also argue that Plaintiff fails to plead damages. I disagree. Plaintiff asserts liquidated damages under Section 7.2 of the PSA. Defendants' argument relies on the PSA having automatically terminated on February 13, 2020. I have already addressed this.

II. **Promissory Estoppel**

Plaintiffs assert their Second Claim for Relief against K Capital in the alternative to their breach of contract claim. Defendants allege that because any relationship between the parties was governed by a written contract, Plaintiff fails to state a claim for promissory estoppel. Colorado courts permit a party to plead promissory estoppel in the alternative to a breach of contract claim. *E.g.*, *Am. Pride Co-op. v. Seewald*, 968 P.2d 139, 142–43 (Colo. App. 1998). *See City & Cty. of Denver v. Dist. Court In & For City & Cty. of Denver*, 939 P.2d 1353, 1359 (Colo. 1997) (recognizing such claims pleaded in the alternative). At or before the trial of this matter, the Court may have to determine which theory may be submitted to the jury, because I do not believe Plaintiff may recover on both. "The alternative remedy of promissory estoppel is never reached when there

6

has been mutual agreement by the parties on all essential terms of a contract." *Scott Co. of California v. MK-Ferguson Co.*, 832 P.2d 1000, 1003 (Colo. App. 1991), *overruled on other grounds by Lewis v. Lewis*, 189 P.3d 1134 (Colo. 2008). Defendants do not otherwise argue that Plaintiff has not properly pleaded the elements of promissory estoppel. Thus, at this stage, dismissal of the claim is unwarranted.

### III.   **Fraud and Misrepresentation**

This Third Claim for Relief is brought against both Defendants. Defendants argue that Plaintiff has failed to comply with Fed. R. Civ. P. 9(b): "A party must plead fraud and mistake with particularity." Defendants assert that Plaintiff failed to plead the time, place, and contents of any false statement(s) and/or the identity of the party making the statement(s). *E.g.*, *Lynn v. Brown*, 803 F. App'x 156, 161 (10th Cir. 2020), *cert. denied*, No. 20-337, 2020 WL 6701097 (U.S. Nov. 16, 2020). I disagree. In the Complaint Plaintiff pleads numerous specific communications from and actions by the Defendants during the course of dealing between the parties from January 6, 2020 through March 2020, which Plaintiff alleges all constituted misrepresentations concerning Defendants' intention (or nonintention) to purchase the property. Some of those communications were directly between the parties, some through brokers, and some through the PSA or the January 6, 2020 letter of intent. The actions included signing the PSA, tendering the $25,000 check, and stopping payment of the check, among other things. Finally, Plaintiff also pleads reasonable reliance (*e.g.*, Complaint ¶¶ 64–66) and damages (Complaint ¶¶ 66–68). Plaintiff has complied with Rule 9(b).

In sum, I find Plaintiff has plausibly pleaded its three claims for relief. Much of the tenor of the Motion to Dismiss is more appropriately asserted in a motion for summary judgment, for

7

which evidence may be submitted.  For these reasons, the Motion to Dismiss [filed November 19, 2020; ECF 17] is **denied.**

      Entered and dated at Denver, Colorado, this 15th day of January, 2021.

                                            BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge